Dear Mr. Ratcliff:
Reference is made to your recent correspondence regarding Attorney General's Opinion No. 99-114, released by this office on May 6, 1999. Therein, this office examined the contractual relationship between the Parish of Livingston and Waste Management, Inc. regarding Waste Management's operation of the Woodside Landfill, as set forth in an agreement dated August 9, 1986 styled Sanitary Landfill Operating and Maintenance Agreement, as amended on August 9, 1988 (the "Amended Agreement"). Based upon our examination of the Amended Agreement, we advised that in our opinion Waste Management is responsible to the Parish for closure of the Woodside Landfill, but that Waste Management is not responsible for post-closure monitoring or the costs associated therewith.
As noted in Opinion No. 99-114, the Attorney General's Office only examined the responsibilities of Waste Management to the Parish of Livingston and the relationship between those parties as set forth in the Amended Agreement. We did not examine documents pertaining to the responsibility of either the Parish or Waste Management to third parties and/or state and federal governmental entities in connection with the landfill and the waste disposal activities conducted thereon.
You have now requested that we examine a document styled Solid Waste Facility Trust Agreement/Standby Trust Agreement (the "Standby Trust"), and advise whether the terms of the Standby Trust causes us to revise Opinion No. 99-114.
Our examination of the Standby Trust reveals that it is a trust agreement entered into by Waste Management, as grantor, and Oak Brook Bank, as trustee, for the benefit of the Louisiana Department of Environmental Quality ("DEQ"). Pursuant to the Standby Trust, DEQ regulations require permit holders of solid waste processing or disposal facilities to provide assurance that "funds will be available when needed for closure and/or post closure care of the facility." In the case of the Woodside Landfill, Waste Management elected to establish, and DEQ apparently agreed to accept, the Standby Trust to provide such financial assurance. Waste Management then provided a letter of credit, drawn on Chase Manhattan Bank, as the trust's initial property. It is our understanding that the letter of credit is in fact the sole property of the Standby Trust.
We note that the Parish of Livingston is not a party to, nor is it a beneficiary of, the Standby Trust. Furthermore, Section 3 of the Standby Trust provides that the parties thereto "intend that no third party have access to the fund [the trust property]" except as provided therein.
Although Section 4 of the Standby Trust authorizes the Secretary of DEQ, as the "administrative authority", to direct the Trustee to make payments from the Standby Trust "to provide for the payment of the costs of closure and/or postclosure care", this provision seems only in favor of DEQ. The provision does not, in our opinion, have the effect of changing the contractual liability of Waste Management to the Parish of Livingston as set forth in the Amended Agreement.
As we interpret Section 4 of the Standby Trust, the Section is intended to provide the Secretary of DEQ with a mechanism to access the Standby Trust property in the event proper closure or post-closure of the Woodside Landfill is not accomplished. The provision does not purport to relieve the Parish of Livingston of its primary responsibility, as owner, for post-closure monitoring of the Woodside Landfill or the costs associated therewith.
In response to your specific question, this office reaffirms the determination made in Attorney General's Opinion No. 99-114. Since the Solid Waste Facility Trust Agreement/Standby Trust Agreement runs in favor of the Department of Environmental Quality and not in favor of Livingston Parish, our opinion regarding the contractual liability of Waste Management, as set forth in the Amended Agreement remains unchanged.
 Yours very truly, RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: JEANNE-MARIE ZERINGUE BARHAM 
Assistant Attorney General
RPI:JMZB:jv